**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| KENNETH R. TRUITT, JR., | ) | CASE NO. 5:12-CV–1835 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JASON BUNTING, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner Kenneth R. Truitt, Jr. ("Truitt"), challenges the constitutionality of his

conviction in the case of *State v. Truitt*, Summit County Court of Common Pleas Case No. CR-

2009-07-2008.  Truitt, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1)

pursuant to 28 U.S.C. § 2254 on July 17, 2012.  On February 4, 2013, Warden Jason Bunting

("Respondent") filed his Answer/Return of Writ.  (ECF No. 11.)  Truitt filed a Traverse on

March 8, 2013[1] (ECF No. 13) to which Respondent replied.  (ECF No. 14.)  Truitt filed a

supplement to his Traverse on April 3, 2013.  (ECF No. 15.)  For reasons set forth in detail

below, it is recommended that Truitt's petition be DENIED.

**I.  Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

---

[1]  Truitt captioned his Traverse as "Summary Judgment Motion."  (ECF No. 13.)

of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court

summarized the facts underlying Truitt's conviction as follows:

> [*P9]  Cassandra Blackmon testified that on August 14, 2008, she heard her
> neighbor, Gwendolyn Hooks, screaming through the walls of their duplex for
> Blackmon to call 911.  Throughout the day, Blackmon had heard arguing coming
> from Ms. Hooks' apartment.  She knew that Truitt was at Ms. Hooks' apartment.
> She heard Ms. Hooks screaming that she was being kicked and punched in the
> face, and to call for police.  Specifically, Blackmon heard Ms. Hooks say, "Why
> are you kicking me? You [are] just going to punch me in my face like that?"
> Blackmon called 911 and said that her neighbor "was getting beat up" and could
> not leave.  Blackmon was scared and called 911 three times because the
> screaming kept getting louder.  It took the police over an hour to respond.  Once
> the police arrived, Blackmon went over to Ms. Hooks' home to check on her.
> Blackmon testified that Truitt had left the duplex before police arrived.
> Blackmon also testified that Ms. Hooks was "frantic" and "partially naked."  The
> apartment was a mess, and Ms. Hooks was bleeding and crying.  After police
> were finished questioning Ms. Hooks, Blackmon took her to the emergency room.
>
> [*P10]  Ms. Hooks testified that she met Truitt in May 2008.  The relationship
> began as a friendship and then escalated into a relationship.  She described Truitt
> as "[v]ery insecure, controlling, and very, very jealous[.]"  Although Truitt did
> not live with her, because he was her boyfriend, he did spend the night at times
> and kept some clothes at her house.  At the time, she believed he was living at
> 912 Bye Street with a friend.  Truitt did not have a key to her home.
>
> [*P11]  On August 14, 2008, Ms. Hooks was at home with her nephew, who at
> the time was eight or nine years old.  Truitt came over, and Ms. Hooks cooked
> dinner for the three of them. After dinner, while her nephew was in the front room
> watching television, Truitt and Ms. Hooks began drinking and smoking marijuana
> in the dining room.  At some point, Truitt accused Ms. Hooks of having another
> man at her house. This escalated into an argument, and then Truitt hit her in the
> face.  Ms. Hooks did not want her nephew to witness the argument, so she called
> her sister-in-law to pick him up.  A male arrived and took the nephew home.
>
> [*P12]  Ms. Hooks testified that she repeatedly asked Truitt to leave the house,
> and that he refused. At one point, she went next door and called the police.  She
> waited outside, but the police did not arrive.  She went back into the home and
> again asked Truitt to leave. Truitt began yelling, cursing, and calling Ms. Hooks
> names.  He told her if she "want[ed] to fool around with somebody" that he was
> "going to show [her.]"  He proceeded to tear her clothes off of her, and she began

screaming to her neighbor to call 911.  Truitt began hitting her, punching her in her face and head, banging her head against the floor, and ripping her clothes  off. She testified that he kept trying to put his fingers in her "private area."  She tried to run out the back door, but he caught her and would not allow her to leave.  He tried to apologize to her, and when she would not look at him, he punched her in the face, and she fell to the floor.  He continued "stomping" and "punching" her. She managed to break free, and ran upstairs to the bathroom to call 911. Eventually, Ms. Hooks heard the police at her door.  However, Truitt had left the house before they arrived.  Ms. Hooks testified that, after the altercation, she had a bad bite mark on her ear and three bite marks on her hip.  Hooks identified several photographs of her injuries.  The day after the incident, Truitt called Ms. Hooks and left messages saying that he was sorry and that he loved her.  Truitt wanted to come speak with Ms. Hooks, but she ignored the messages.

[*P13]  Officer Karlton Starks, a police officer with the city of Akron, responded to a 911 call regarding an assault at Ms. Hooks' apartment on August 14, 2008. He testified that, when he arrived, he noticed that Ms. Hooks' clothes were disheveled and she was very frantic and crying.  He described the scene as "chaotic" and "in  disarray."  Ms. Hooks had an injury on her thigh several inches long that appeared to be a bite.  After speaking with Ms. Hooks, Officer Starks turned the case over to the detectives and the Crime Scene Unit.

[*P14]  Sergeant Michael Rinn, the midnight supervisor of the Crime Scene Unit, testified that he responded to Ms. Hooks' apartment on August 14, 2008.  He was told that the victim had been sexually assaulted.  He took photographs of the scene and collected what appeared to be hair.  He testified that some of the hair was collected near blood on the living room floor.  He also took photographs of the victim.  One photograph shows an injury to the back of her right ear, and another shows a bite mark on her right thigh.

[*P15]  Lynn Rogers, a triage nurse in the St. Thomas Emergency Department, testified that she saw Ms. Hooks in the emergency room in the early hours of August 15, 2008.  She testified that Ms. Hooks reported that she had been assaulted by her significant other.  Specifically, she was "hit repeatedly in head, kicked in the back, ha[d] positive bite mark to right leg" and the significant other "did attempt to choke her[.]"  Ms. Hooks "had a major injury to the left side of her upper lip."  When asked what level of pain she was experiencing on a scale of zero to ten, Ms. Hooks responded that she was at a seven.  She specifically said that she felt pain in her mouth and her head.  Rogers' reports indicate that "[b]ite wounds" were cleansed on the ear, thigh, and buttocks area.  Because this was reported as a sexual assault, Rogers contacted the Domestic Violence Enforcement Unit ("DOVE") unit.

[*P16]  Valorie Prulhiere, a sexual assault nurse with the DOVE unit, testified

-3-

that she examined Ms. Hooks and took a statement from her on August 15, 2008. Ms. Hooks named Truitt as the assailant. Prulhiere also collected swabs from Hooks' thigh and flank. Those swabs were given to police.

[*P17] Detective John Ross testified that he collected DNA samples from Ms. Hooks and Truitt and submitted them for analysis. BCI forensic scientist Lindsey Nelsen-Rasch testified that she received the samples. The samples were sent to LabCorp for analysis.

[*P18] LabCorp forensic scientist Shaw Weiss testified that LabCorp examined swabs from Ms. Hooks' wounds for DNA. There was a partial profile from the flank wound that was consistent with Truitt. The thigh wound showed a mixture consistent with Ms. Hooks and Truitt. LabCorp also did Y-STR testing, a better exclusion than inclusion test since all males in the paternal lineage will have the same Y-STR profile. Using Y-STR, Truitt and his paternal relatives could not be excluded as a source of the DNA on the thigh wound.

[*P19] Wanda Newsome testified that she and Truitt had previously been in an on and off again relationship. They were a couple in December of 1995. On December 3, 1995, Truitt "jumped" her. He bit her on the ear, arm, and forehead. This testimony was allowed after a cautionary instruction by the court limiting the purposes for which the jury could consider the testimony.

[*P20] Truitt did not present any testimony or offer any exhibits in his defense. During closing arguments, he admitted that he assaulted Ms. Hooks.

*State v. Truitt*, 2011 Ohio App. LEXIS 5418, 2011-Ohio-6599 (Ohio Ct. App., Dec. 21, 2011).

## II. Procedural History

### A. Conviction

On July 17, 2009, a Summit County Grand Jury charged Truitt with one count of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(2), one count of aggravated burglary in violation of O.R.C. § 2911.11(A)(1), one count of attempted rape, one count of abduction in violation of O.R.C. § 2905.02(A)(2), and one count of assault in violation of O.R.C. § 2903.13(A). (ECF No. 11-1, Exh. 1.) Prior to trial, the charge of rape was dismissed. (ECF No. 11-1, Exh. 8.) On July 1, 2010, a jury found Truitt guilty of aggravated burglary, assault, and

-4-

abduction.  (ECF No. 1101, Exh. 7.)  The jury did not reach a verdict on the attempted rape charge, which the court dismissed.  (ECF No. 11-1, Exh. 8.)  On July 12, 2010, the trial court sentenced Truitt to a term of eight years incarceration for the aggravated burglary, five years for abduction, and six months for assault.  *Id*.  The sentences were to be served concurrently for an aggregate sentence of eight years.  *Id*.

## B.  Direct Appeal

On August 10, 2010, Truitt, through counsel, filed a Notice of Appeal (ECF No. 11-1, Exh. 9) with the Court of Appeals for the Ninth Appellate District ("state appellate court") raising the following assignments of error:

1. The trial court erred by admitting hearsay evidence at trial.

2. The trial court erred by admitting DNA evidence at trial.

3. The trial court erred by admitting prior bad act evidence at trial.

4. Mr. Truitt's convictions for aggravated robbery[2] and abduction were against the manifest weight of the evidence.

5. Mr. Truitt was unlawfully sentenced upon allied offenses of similar import.

(ECF No. 11-1, Exh. 10.)

On December 21, 2011, the state appellate court affirmed Truitt's convictions, but sustained Truitt's fifth assignment of error and remanded the matter to the trial court to determine whether any offenses were allied and of similar import.  *Truitt*, 2011-Ohio-6599 at ¶¶47-48.

---

[2] Truitt actually challenges his conviction for aggravated burglary and argues as such in his brief.  The reference to "aggravated robbery" appears to be merely a typographical error.

-5-

On February 2, 2012, Truitt filed a Notice of Appeal with the Supreme Court of Ohio raising the first four propositions of law as in his appellate brief.[3]  (ECF No. 11-1, Exhs. 14 & 15.)  On April 14, 2012, the appeal was dismissed as not involving any substantial constitutional question.[4]  (ECF No. 11-1, Exh. 17.)

**C.    Resentencing**

On May 22, 2012, the trial court found the offenses were allied offenses of similar import. (ECF No. 11-1, Exh. 26.)  Truitt was resentenced to eight years imprisonment for aggravated burglary and the remaining offenses were merged.  *Id.*

**D.    Federal Habeas Petition**

On July 17, 2013, Truitt filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> GROUND ONE: Conviction for aggravated burglary against manifest weight of evidence violated Due Process Clause of Fourteenth Amendment.
>
> Supporting Facts: There is ample exculpatory factors of testimonial evidence by State's witness Wanda Newsome and the alleged victim Ms. Hooks we cohabited in the dwelling prior to and on the day of the altercation.  (Tr. 60, 63.62), (Tr.112, 113), (Exhibit 22), (Tr.156)  See Exhibit A of attached Memorandum attached to this form.
>
> GROUND TWO: Conviction for abduction against manifest weight of evidence violated Fourteenth Amendment Due Process Clause.
>
> Supporting Facts: The State Court at the conclusion of evidence presented at trial requested instructions for a lesser-included offense for the alleged abduction where elements had not been established. (See Exhibit B attached to

---

[3]  Truitt omitted the fifth assignment of error from his memorandum in support of jurisdiction, presumably because he prevailed on that issue.

[4]  Truitt filed a number of post-conviction motions, all of which were denied.  (*See* Respondent's Answer/Return of Writ, ECF No. 11 at 7-8.)

Memorandum attached to this form).

(ECF No. 1.)

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to

reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[5]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a

---

[5]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

"petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

**C. Analysis**

Truitt argues that his convictions for aggravated burglary and abduction are against the manifest weight of the evidence and are in violation of the Due Process clause.[6]  (ECF No. 1 at 5, 7.)  This Court typically construes such a claim as one challenging the sufficiency of the evidence, especially when raised by petitioners proceeding *pro se*.  Respondent asserts that Truitt's two grounds for relief are procedurally defaulted, because Truitt did not argue in state court that his convictions violated due process and were unsupported by sufficient evidence.  However, it is undisputed that Truitt raised the argument that those convictions were against the manifest weight of the evidence before both the state appellate court and the Ohio Supreme Court.

In *Nash v. Eberlin*, 258 Fed. App'x. 761, 764–765 (6th Cir.2007), the Sixth Circuit found that a petitioner "did not procedurally default on his sufficiency of the evidence claim by not presenting it to the Ohio state courts" despite the fact that the petitioner therein "did not literally

---

[6]  Truitt is not challenging his assault conviction, nor did he challenge it in state court. (ECF No. 1.)

-10-

argue that there was insufficient evidence to support his conviction."  The *Nash* court explained that "the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence."  *Id*.

Consequently, this Court declines to address the procedural default issue, and will instead proceed to address the merits of Truitt's claims.  The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003); *accord Swanigan v. Sherry*, 502 F. App'x 544, 546 (6th Cir. 2012) ("Because we hold that the state court's decision was not unreasonable on the merits, we do not address Swanigan's arguments relating to procedural default.")

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

-11-

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court

-12-

must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A.    Grounds One and Two: Manifest Weight and Sufficiency of the Evidence**

In grounds one and two, Truitt asserts that his aggravated burglary and abduction convictions are against the manifest weight of the evidence.  (ECF No. 1.)  Construing Truitt's *pro se* petition liberally, the Court will address the sufficiency of the evidence with respect to the

-13-

two convictions.  The Court will not address whether the convictions are against the manifest weight of the evidence, as such grounds for relief are not cognizable on federal habeas review.[7] *See, e.g.*, *Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin,* 2006 WL 2090093 at *6 (S.D. Ohio 2006).

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) *citing Walker*, 703 F.3d at 969-70;

---

[7]  As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess v. Eberlin,*2006 WL 2090093 at *7 (S.D. Ohio 2006), *quoting State v. Martin*, 20 Ohio App.3d 172,175, 485 N.E.2d 717 (Ohio Ct. App. 1983).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Truitt's convictions were against the manifest weight of the evidence.  *Id.*

*Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court recently emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury – not the court– to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ----, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. ----, ----- , 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would conclude that petitioner . . . is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in *its* conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id*. (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

The state appellate court determined that Truitt's convictions of aggravated burglary and abduction were not against the manifest weight of the evidence, and, consequently, were

sufficiently supported.[8]  Upon careful review of the trial transcript, the Court finds this determination was not unreasonable.

### 1.  Aggravated Burglary

Truitt was charged and convicted of abduction under O.R.C. § 2911.11(A)(1), which reads in relevant part as follows: "No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply....  The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"  The jury instructions explained the elements as derived from the language of the statute.  (ECF No. 11-5, Tr. 427-31.)

This Court has conducted its own independent review of the evidence.  The following, largely the same evidence referenced in the state appellate court's opinion, is sufficient to uphold Truitt's conviction for aggravated burglary.

The victim testified that she lived in a duplex house in Akron, Ohio on Work Avenue for ten years, and that she always lived alone in her unit.  (Tr. 61.)  She admitted that Truitt, her boyfriend at the time, would occasionally spend the night and had some clothing there, but she was adamant that he did not live with her.  (Tr. 60-61.)  It was her belief that Truitt was living on Bye Street.  (Tr. 61.)  The victim further testified that she did not give Truitt a key to the house,

---

[8]  The state appellate court inaccurately refers to a conviction for aggravated robbery, an error that appears to stem from a typographical error in Truitt's appellate brief.  (ECF No. 11-1 at 22.)  However, the evidence referred to by the court plainly refers to evidence supporting convictions for aggravated burglary and abduction.

that to the best of her knowledge he had never asked for a key, and that she would not have given him one had he asked.[9]  (Tr. 62, 99.)

   According to the victim, on August 14, 2008, she was making dinner for her nephew at her home when Truitt told her that he was coming over.  (Tr. 62-63.)  Even prior to Truitt's arrival at her home, she believed Truitt was behaving jealously.  (Tr. 64.)  Truitt had questioned her about the male individual who had dropped her nephew off at her home and accused her of "messing with" said male.  (Tr. 64.)  When he arrived at her house, Truitt and the victim sat down to smoke marijuana and drink wine.  (Tr. 66-67.)  Almost from the start, Truitt accused the victim of "fooling around" with the man that had brought her nephew to her home.  *Id.*  She asked him to leave but he did not.  (Tr. 67.)  Thereafter, he smacked her "really hard" in the face.  *Id.*  She telephoned her sister-in-law, whose husband came and picked up her nephew.  (Tr. 68-69.)  She repeatedly asked Truitt to leave, but he refused.  (Tr. 68-70.)

   She testified that Truitt said he would "show [her]" if she wanted to "fool around with somebody [else]."  (Tr. 70.)  He then proceeded to pull and tear her clothes off, ignoring her continued requests to leave.  *Id.*  In the process, she was screaming for her neighbor to call 911.[10]  *Id.*  The victim asserted that Truitt kept hitting her, punching her in the face banging her head against the floor, and ripping her clothes off.  (Tr. 71.)  She testified that Truitt kept trying to digitally penetrate her vagina.  *Id.*  She managed to get away from Truitt.  (Tr. 73.)  Not caring

---

[9]  The victim did testify that Truitt would take her keys and cell phone from her when they were having an argument.  (Tr. 98.)

[10]  The victim's neighbor, Cassandra Blackmon, testified consistent with this statement. She indicated that, on the evening in question, the victim screamed her name, asking her to call 911.  (Tr. 34, 36-37.)  She called 911 and reported that her neighbor was "getting beat up" and that he "wouldn't allow her to leave the house."  (Tr. 37.)

that she was mostly naked after the assault, she tried to flee the house but Truitt prevented her from leaving when he caught her by the back door.  (Tr. 73-74, 85-86.)  The victim said Truitt apologized, but started to punch her again when she would not look at him.  (Tr. 74.)  She stated that she "just couldn't get away.  I was trying to and I couldn't get out the door."  *Id*.

Lynn Rogers, an emergency room nurse, treated the victim immediately after the assault in the early morning hours of August 15, 2008.  (ECF No. 11-4, Tr. 185, 189, 192.)  She recalls the victim's mouth and upper lip being split.  (Tr. 194.)  Afterwards, Valerie Prulhiere, a sexual assault nurse examiner, treated the victim.  (Tr. 285, 292.)  She documented the injuries to the victim, and among other injuries, noted visible swelling and contusions on the victim's forehead, bite marks on the right ear, two tearing injures and swelling of the upper lip, bruising of the neck, and bite wounds near the thigh/hip area.  (Tr. 308-316.)

Viewing this testimony in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of Aggravated Burglary beyond a reasonable doubt.  There is ample evidence that Truitt trespassed in the victim's home, an occupied structure, when he refused to leave.  There is further evidence that Truitt trespassed with the purpose to commit a criminal offense, in this case an assault on the victim, which resulted in the infliction of physical harm.

The requirement that the trespass be accomplished by force, stealth, or deception may not be readily apparent in the instant case, given that Truitt's initial presence in the victim's home appears to have occurred with the acquiescence of the victim.  However, in an analogous case, the Ohio Supreme Court ruled that one who lawfully enters a premises becomes a trespasser subject to conviction for burglary by virtue of the commission of a felony.  *State v. Steffen*, 509

-18-

N.E.2d 383, 388, 31 Ohio St. 3d 111 (Ohio 1987).  The *Steffen* court noted that a privilege once granted may be revoked.  *Id*.  "[E]ven assuming lawful initial entry, the jury was justified in inferring from the evidence that appellant's privilege to remain in [the victim's] home terminated the moment he commenced his assault on her....  [A] powerful inference arises that appellant was no longer privileged to remain in [the victim's] home, and that he knew his privilege had been terminated."  *Id*.; *accord Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) (finding sufficient evidence of aggravated burglary because any privilege petitioner had to be on the premises ended when petitioner strangled the victim, resulting in a trespass); *State v. Williams*, 2013 Ohio App. LEXIS 505, 2013-Ohio-573 at ¶28 (Ohio Ct. App., Feb. 21, 2013) (any permission given to defendant to be on the premises was revoked when he threatened to inflict harm on the victim and proceeded to assault her to the point of causing serious physical harm, and, therefore, the evidence was sufficient to support the conviction for aggravated burglary); *State v. Lofton*,  2009 Ohio App. LEXIS 3171, 2009-Ohio-3732 at ¶45 (Ohio Ct. App., Jul. 30, 2009) (denying claim that the evidence did not demonstrate an aggravated burglary, because the evidence indicated that defendant's privilege to be in the victim's house terminated when appellant began his assault on the victim).

Therefore, under Ohio law, the element of trespass by force, stealth, or deception is satisfied when the privilege to be in another's home is lost as a result of a violent attack.  This Court cannot overrule a state court's interpretation of state law.  *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."); *see also Riley v. Woods*, 2010 U.S. Dist. LEXIS 81453, 11-12 (E.D. Mich., Aug. 11, 2010) ("A federal habeas court must therefore

defer to a state appellate court's construction of the elements of state crimes.") (*citing Sanford v. Yukins*, 288 F. 3d 855, 862 (6ᵗʰ Cir. 2002); *Coe v. Bell*, 161 F. 3d 320, 347 (6ᵗʰ Cir. 1998)).

Truitt's argument that he was privileged to be on the premises or that he lived in the premises does not entitle him to habeas relief.  The victim's testimony refutes his position.  The Sixth Circuit has held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction.  *United States v. Terry*, 362 F.2d 914, 916 (6ᵗʰ  Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); *see also O'Hara v. Brigano*, 499 F.3d 492, 500 (6ᵗʰ Cir. 2007) (holding that victim's testimony that habeas petitioner abducted her and raped her was constitutionally sufficient to sustain conviction despite lack of corroborating witness or physical evidence); *United States v. Howard*, 218 F.3d 556, 565 (6ᵗʰ Cir. 2000) (holding that even if the only evidence was testimony of the victim, that is sufficient to support a conviction, even absent physical evidence or other corroboration); *United States v. Jones*, 102 F.3d 804, 807 (6ᵗʰ Cir. 1996) (noting that there is sufficient evidence to support a conviction even if the "circumstantial evidence does not remove every reasonable hypothesis except that of guilt") (internal quotation marks omitted).

As such, there was ample evidence for the state appellate court to determine that Truitt's Aggravated Burglary conviction was not against the manifest weight of the evidence and, consequently, was sufficiently supported.

### 2.  Abduction

Truitt was charged and convicted of abduction under O.R.C. § 2905.02(A)(2), which reads in relevant part as follows: "(A) No person, without privilege to do so, shall knowingly do any of the following: ... (2) By force or threat, restrain the liberty of another person under circumstances

that create a risk of physical harm to the victim or place the other person in fear[.]"  The jury instructions were read in the language of the statute.  (ECF No. 11-5, Tr. 435-36.)

The testimony recited above is also sufficient to support Truitt's abduction conviction. The victim testified that Truitt physically prevented her from fleeing her home while Truitt was in the process of assaulting her.  Not only does the victim's testimony establish that the restraint was made under circumstances that create a risk of physical harm, but there is testimony from medical personnel that physical harm actually occurred.  As discussed above, the testimony of the victim alone is constitutionally sufficient to sustain a conviction.  Herein, the victim's testimony that she was prevented from leaving her home was buttressed by her neighbor. Reviewing the evidence, and especially the testimony of the victim, in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of abduction beyond a reasonable doubt.

Based on the above and applying the "double deference" required under the AEDPA, the Court cannot find that the state appellate court's decision "was so unsupportable as to fall below the threshold of bare rationality."  *Coleman*, 132 S.Ct. at 2065.  Accordingly, Truitt's sufficiency of the evidence claims are without merit.

### V.  Conclusion

For the foregoing reasons, it is recommended that Truitt's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: September 10, 2013

-21-

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).